**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

ESTATE OF DOMENIC CARUSO,

                Plaintiff,

    v.                              **Civil No. 15-7936 (JS)**

FINANCIAL RECOVERIES,

                Defendant.

## OPINION

This matter is before the Court on the "Motion for Summary Judgment" [Doc. No. 19] filed by defendant Financial Recoveries. Also before the Court is the "Motion for Summary Judgment as to Count I" [Doc. No. 20] filed by plaintiff Estate of Domenic Caruso. The Court has received plaintiff's opposition [Doc. No. 21] and defendant's opposition [Doc. No. 22] to the respective motions. Defendant and plaintiff seek summary judgment on all claims in this putative class action.[1] The Court exercises its discretion to decide the parties' motions without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. Pursuant 28 U.S.C. § 636(c), the

---

[1] While the parties filed separate motions for summary judgment, due to "the shared subject-matter of the motions and the adverseness of the arguments advanced" by the parties, the Court will consider the parties motions as cross-motions. Formosa Plastics Corp., U.S.A. v. Ace Am. Ins. Co., C.A. No. 06-5055, 2010 WL 4687835, at *1 n.2 (D.N.J. Nov. 9, 2010).

parties consented to the jurisdiction of this Court to hear the case. [Doc. No. 14]. For the reasons to be discussed, defendant's motion will be GRANTED in part and DENIED in part; plaintiff's motion will be DENIED.

## BACKGROUND

Plaintiff brings this putative class action for alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1682 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices. Compl. ¶ 1 [Doc. No. 1]. The original debt in this action arose from the decedent Domenic Caruso's death at Kennedy University Hospital ("Kennedy") on June 25, 2013 after suffering a cardiac arrest. See Certificate of Death, Pl.'s Opp'n Ex. A [Doc. No. 21-1]. The decedent's June 23 death at Kennedy resulted in a medical bill totaling $254.24 which Kennedy forwarded to plaintiff. The record does not specifically indicate to whom the bill was addressed. In response to the bill, plaintiff's counsel wrote Kennedy on October 2, 2013 disputing the alleged debt, demanding validation of the alleged debt, and advising that plaintiff was represented by counsel. Pl.'s Opp'n Ex. B; Pl.'s Statement of Material Facts ("SMF") ¶ 2 [Doc. No. 20-2].

On February 21, 2014, defendant received the decedent's account for collection from Kennedy. Defendant placed a validation letter for the account on file to be mailed by a third-party mail

vendor, RevSpring, Inc. ("RevSpring"). On the same day, defendant received confirmation from RevSpring that the February 21, 2014 validation letter was mailed to "Mr. Caurso." Def.'s SMF ¶¶ 34-36 [Doc. No. 19-1]. Unfortunately, it is not known to what address the letter was mailed. The record does not include the February 21, 2014 letter because it no longer exists. According to defendant, RevSpring only retains letters sent to debtors for one year and, thus, RevSpring retained the letter until February 2015 or about nine (9) months prior to plaintiff commencing this suit. Id. ¶¶ 26-28.

Plaintiff argues it never received the February 21, 2014 validation letter and that defendant's October 6, 2015 letter sent to plaintiff's counsel was the first communication from defendant regarding the alleged debt. Compl. ¶ 10; Pl.'s SMF ¶ 7. The October 6, 2015 letter mailed to plaintiff's counsel was in an envelope with a glassine window that showed counsel's mailing address. Also visible through the glassine window was a barcode and 9-digit number above the address. According to plaintiff, the barcode and number contained information unique to the decedent and his alleged debt owed to Kennedy. Compl. ¶¶ 11-12. The substance of the October 6, 2015 letter states:

>
> **Re:**             **DOMENIC CARUSO**
> Fin Rec Acct#: 86476026[2]
> Balance Due:   $254.24
>
> Dear Sir or Madam:
>
> As you know, we are representing Kennedy Health and are attempting to collect an amount of $254.24 from your client.
>
> Please provide us with an updated status of the account. If suit has been filed, please indicate against whom.
>
> If you have any questions, please call 800-705-9068 and speak with one of our representatives.
>
> **This Company is a debt collector. We are attempting to collect a debt and any information obtained will be used for that purpose.**

Def.'s Ex. A [Doc. No. 19-3]. Plaintiff alleges the October 6, 2015 letter was the first communication from defendant regarding the alleged debt and did not contain the requisite statements in violation of the FDCPA. Compl. ¶ 21.

Because defendant had not posted the requisite bond pursuant to N.J.S.A. 45:18-1, plaintiff also alleges defendant was not lawfully permitted to collect consumer debts in New Jersey in violation of the FDCPA. Id. ¶ 24. On January 24, 2016, defendant filed the requisite bond with the New Jersey Department of Treasury. Def.'s Attach. 1 [Doc. No. 19-1].

---

[2] The Court notes that the October 6, 2015 letter is filed on the public docket with the decedent's account information disclosed.

On November 6, 2015, plaintiff commenced this putative class action alleging defendant violated the FDCPA by: (1) using prohibited language or symbol on the envelope of the October 6, 2015 letter in violation of 15 U.S.C. § 1692f(8); (2) failing to include the requisite statements in the October 6, 2015 letter in violation of §§ 1692g(a)(3)-(5); and (3) failing to post the requisite bond with the New Jersey Department of Treasury pursuant to N.J.S.A. 45:18-1. See generally Compl.

The Rule 16 conference was held on July 11, 2016. The Court deferred discovery as to class certification until defendant's motion for summary judgment is decided and Ordered the parties to conduct discovery only as to the merits of plaintiff's complaint. July 11, 2016 Scheduling Order [Doc. No. 16]. Thereafter the parties filed their motions. [Doc. Nos. 19, 20].

**DISCUSSION**

   **A.   Summary Judgment Standard**

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Summary judgment is not appropriate if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable

jury could return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The materiality of a fact turns on whether under the governing substantive law a dispute over the fact might have an effect on the outcome of the suit. Id. The Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. See Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008) (citation omitted).

The moving party bears the initial burden of informing the Court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23. Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. The party opposing summary judgment may not "rest upon mere allegation[s] or denials of his pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. Id. at 256-57; Fed. R. Civ. P. 56(c)(1)(A). Additionally, "if the non-moving party's evidence 'is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted.'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO, 982 F.2d 884, 890-91

(3d Cir. 1992) (quoting <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992)).

## B. __Spokeo and Article III Standing__

The parties do not discuss plaintiff's constitutional standing to sue under the FDCPA.[3] The Court however, has an independent obligation to determine whether it has subject matter jurisdiction to decide plaintiff's claim in light of the recent decisions in the Third Circuit and this District applying <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540 (2016), <u>as revised</u>, (May 24, 2016). <u>See</u> <u>Bock v. Pressler & Presler, LLP</u>, 658 Fed. Appx. 63, 65 (3d Cir. 2016) (remanding the case on the defendant's appeal of summary judgement decision in favor of the plaintiff to determine in the first instance whether the plaintiff has Article III standing to maintain his FDCPA claims); <u>see</u> <u>also</u> <u>Fuentes v. AR Res., Inc.</u>, C.A. No. 15-7988 (FLW/LHG), 2017 WL 1197814, at *2 (D.N.J. Mar. 31, 2017) (raising <u>sua</u> <u>sponte</u> Article III standing issue on the parties' cross-motions for summary judgment in a FDCPA action) (citing <u>Ballentine v. United States</u>, 486 F.3d 806, 810 (3d Cir. 2007)).

---

[3] The Court notes that defendant's standing argument is limited to plaintiff's claim for defendant's failure to post bond in violation of state law and, thus, is not of material assistance to the Court's analysis below discussing plaintiff's standing to sue under specific sections of the FDCPA in light of the Supreme Court's decision in <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540 (2016), <u>as revised</u>, (May 24, 2016).

Under Article III of the United States Constitution, a plaintiff invoking the jurisdiction of federal courts must demonstrate: "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." In re Nickelodeon Consumer Privacy Litig., 827 F.3d 262, 272 (3d Cir. 2016), cert. denied sub nom., C.A.F. v. Viacom Inc., 137 S. Ct. 624 (2017). At the pleading stage, general factual allegations may be sufficient to survive a facial challenge to a plaintiff's Article III standing; however, at the summary judgment stage, the plaintiff can no longer rely on his pleadings but must set forth affirmative evidence to establish his right to invoke federal jurisdiction. See Bock v. Pressler & Pressler, LLP, C.A. No. 11-7593 (KM/SCM), 2017 WL 2304643, at *3 n.3 (D.N.J. May 25, 2017) (applying the summary judgment standard in determining whether there is a factual issue as to the question of plaintiff's Article III standing on remand in a FDCPA action).

The precise standing issue before the Court is whether plaintiff has demonstrated an "invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent, not conjectural or hypothetical." Bock, 2017 WL 2304643, at *5. For a harm to be "particularized," it must "affect the plaintiff in a personal and individual way." Nickelodeon, 827 F.3d at 272 (quoting Lujan v. Defs. Of Wildlife,

504 U.S. 555, 561 (1992)). While a "concrete" harm need not be tangible, it must be "'de facto; that is, it must actually exist'; it cannot be merely 'abstract.'" Bock, 2017 WL 2304643, at *5 (quoting Nickelodeon, 827 F.3d at 272; Spokeo, 136 S. Ct. at 1548). In discussing the lessons of Spokeo with regard to "concrete harm," the Honorable Kevin McNulty, U.S.D.J., provided the following summary, which this Court adopts:

> Spokeo teaches, however, that a mere wave of the Congressional hand—i.e., the creation of a cause of action—is not enough to render an abstract injury concrete. Allegations of a "bare procedural violation, divorced from any concrete harm" cannot satisfy the Article III injury-in-fact requirement. Spokeo 136 S. Ct. at 1549 (citing Summers v. Earth Island Inst., 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")); Nickelodeon, 827 F.3d at 274 (citing id. at 1550). In other words, a bare violation of a procedural right granted by statute is not inherently injurious; to constitute an injury-in-fact, such a violation must result in a concrete harm. That requirement persists even where a statute "purports to authorize [a] person to sue to vindicate [a statutory procedural] right." Id.; Raines v. Byrd, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."). "Thus, standing based [only] on a violation of a statutorily created right turns on whether such a right is substantive or merely procedural." Fuentes v. AR Res., Inc., C.A. No. 15-7988 (FLW/LHG), 2017 WL 1197814, at *3 (D.N.J. Mar. 31, 2017).

Bock, 2017 WL 2304643, at *5.

The Court begins its analysis by determining whether plaintiff has demonstrated an injury-in-fact to establish its

standing to sue for defendant's alleged violation of 15 U.S.C. § 1692f(8).

## C.    <u>15 U.S.C. § 1692f(8) – Barcode and Number</u>

The Court finds that plaintiff has failed to introduce sufficient evidence to establish its Article III standing to sue under § 1692f(8). In particular, the Court finds that plaintiff failed to demonstrate any "particularized harm" with "personal and individual" effect to confer standing when defendant mailed a collection letter with a barcode and number visible through the glassine envelope. See <u>Nickelodeon</u>, 827 F.3d at 272 (citation omitted). This is so because the barcode and number reveal no private information regarding the deceased debtor or his alleged debt to Kennedy on their face or when scanned by a barcode reader. Because the parties' arguments regarding plaintiff's § 1692f(8) claim is relevant to the Court's analysis of plaintiff's Article III standing, the Court will provide brief summaries.

Defendant argues summary judgment should be granted in its favor because the barcode and number visible through the glassine envelope of the October 6, 2015 letter are subject to the "benign language exception" to § 1692f(8). Def.'s Br. at 13 [Doc. No. 19-1]. The subsection prohibits the use of "any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails . . . except that a debt collector may use his business name if such name does

not indicate that he is in the debt collection business." 15 U.S.C. § 1692f(8). Defendant requests the Court to apply the "benign language exception" because the barcode and number did not contain any information related to the deceased debtor or his alleged debt to Kennedy. Def.'s Br. at 12-17. In particular, defendant argues the barcode and number simply contained a serial number created by RevSpring for tracking purposes as required by the U.S. Postal Service. When scanned by a barcode reader, the barcode reveals a 65-digit sequence of numbers, and the 9-digit number above the barcode also appears in the scanned barcode. Stated differently, the barcode, the 9-digit number, and the 65-digit sequence of numbers do not reveal any information about the deceased debtor or his alleged debt owed to Kennedy. Id. at 11-13; see also Declaration of Melissa Burns ("Burns Decl.") ¶¶ 3-6 [Doc. No. 19-3].

Plaintiff alleges defendant violated § 1692f(8) because the barcode and number on the October 6, 2015 letter was visible through the glassine envelope and, thus, constitute prohibited language or symbol under § 1692f(8). Compl. ¶¶ 21(a)-(b). In its complaint, plaintiff alleges the barcode and number contained information that is unique to the deceased debtor, Domenic Caruso, and the alleged debt owed to Kennedy. Compl. ¶ 12. In response to defendant's motion and in support of its own motion on this issue, plaintiff now argues § 1692f(8) must be read literally and, thus,

no "benign language exception" exists to the subsection. Plaintiff does not present any facts to demonstrate the barcode and number contained information regarding the deceased debtor or his alleged debt. Stated differently, the crux of plaintiff's argument on this issue is there is no "benign language exception" under § 1692f(8) and the Third Circuit has refused to expressly adopt the exception. Pl.'s Br. at 5-8 [Doc. No. 20-1]; see also Pl.'s Opp'n at 5-7 [Doc. No. 21]. In support, plaintiff relies on Douglass v. Convergent Outsourcing, 765 F.3d 299 (3d Cir. 2014), and its progeny. Pl.'s Opp'n. at 7.

While plaintiff is correct that the Third Circuit declined to decide whether it would adopt the "benign language exception," plaintiff fails to recognize the reasoning behind the decision, which is also pertinent to the Court's constitutional standing analysis. In Douglass, the lower court held that the debtor's account number and a quick response ("QR") code visible through a glassine envelope met the "benign language exception" to § 1692f(8). Douglass, 765 F.3d at 300. On the debtor's appeal, the Third Circuit vacated and reversed the lower court's ruling in favor of the debt collector. The Third Circuit explained it need not decide whether there is a "benign language exception" because even if it exists, the language or symbol at issue—the debtor's account number and the QR code—revealed the debtor's account information including the balance of the debt when scanned by a

smartphone app. Id. at 303. What mattered to the Third Circuit was that the information at issue—the debtor's account number with the debt collector and the QR code which revealed the debtor's private information when scanned by a publicly available software—cannot be "benign" when one considers "the very reason Congress enacted the FDCPA." Id.

> Here, [the debt collector's] disclosure implicates a core concern animating the FDCPA—the invasion of privacy. Section 1692(a) of the FDCPA explains that Congress enacted the law in response to "abundant evidence" of abusive debt collection practices that cause manifest harms to individuals, among them "invasions of individual privacy." 15 U.S.C. § 1692(a). The disclosure of [the debtor's] account number raises these privacy concerns. The account number is a core piece of information pertaining to [the debtor's] status as a debtor and [the debt collector's] debt collection effort. Disclosed to the public, it could be used to expose her financial predicament. Because [the debt collector's] disclosure implicates core privacy concerns, it cannot be deemed benign.

Id. at 303-04. The Third Circuit's analysis of § 1692f(8) is consistent with the FDCPA's stated purpose "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. 1692(e).

To establish Article III standing post-Spokeo, a plaintiff must allege an "invasion of a concrete and particularized legally protected interest resulting in harm that is actual or imminent,

not conjectural or hypothetical." <u>Bock</u>, 2017 WL 2304643, at *5. To be particularized, the alleged harm must "affect the plaintiff in a personal and individual way." <u>Nickelodeon</u>, 827 F.3d at 272. "Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" <u>Spokeo</u>, 136 S. Ct. at 1548. One court in this District recently addressed the issue of standing to sue under § 1692f(8), post-<u>Spokeo</u>. <u>St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.</u>, C.A. No. 15-2596 (FLW/DEA), 2017 WL 1102635, at *1 (D.N.J. Mar. 24, 2017).

In <u>St. Pierre</u>, the plaintiff alleged that the defendant violated the FDCPA by mailing a collection letter to plaintiff that disclosed his account number through a glassine envelope. On the defendant's motion to dismiss, the Honorable Freda L. Wolfson, U.S.D.J., held that the plaintiff sufficiently alleged the concreteness of his injury due to the defendant's alleged violation of § 1692f(8) and denied the motion. In so holding, Judge Wolfson relied on <u>Douglass</u> to note that § 1692f(8) protects a consumer's "right to be free from [a debt collector] disclosing his private information, including his account number, on any debt collection envelope." <u>Id.</u> at *6 (citing <u>Douglass</u>, 765 F.3d at 303). Therefore, to establish Article III standing to sue for a violation of 15 U.S.C. § 1692f(8), a plaintiff must allege that the subject language or symbol must implicate the "core concern animating the

FDCPA—the invasion of privacy." <u>Douglass</u>, 765 F.3d at 303. Stated differently, the subject language or symbol must contain some information related to the consumer or his alleged debt. Judge Wolfson concluded, "because the FDCPA unambiguously grants plaintiff a statutory right to be free from the disclosure of private information that could expose his status as an alleged debtor, and that the right to privacy is an interest that has long been recognized at law," the plaintiff had demonstrated the concreteness of his alleged injury for Article III standing purposes. <u>St. Pierre</u>, 2017 WL 1102635, at *6. Therefore, it follows that under 15 U.S.C. § 1692f(8), post-<u>Spokeo</u>, a plaintiff cannot demonstrate "injury-in-fact" affecting him in a personal or individual way without showing that the subject language or symbol contained private information concerning plaintiff or his alleged debt.

Here, plaintiff's complaint alleges defendant violated § 1692f(8) by using prohibited language and symbol visible through a glassine envelope that contained the deceased debtor's private information. Compl. ¶¶ 12, 21. At the pleading stage, plaintiff's factual allegations may be sufficient to survive a facial challenge to its standing to sue under § 1692f(8). See <u>Bock</u>, 2017 WL 2304643, at *3 n.3. However, discovery is complete and the present matter is before the Court on the parties' cross-motions for summary judgment. Therefore, plaintiff can no longer merely rely on the

averments in its complaint. <u>Lujan</u>, 504 U.S. at 561 (holding that a plaintiff "can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'" to survive a challenge to his constitutional standing at the summary judgment stage); <u>see also</u> <u>Bock</u>, 2017 WL 2304643, at *3 n.3 (applying the summary judgment standard to decide a "factual challenge" to the court's jurisdiction, <u>i.e.</u>, challenge to the plaintiff's standing after the completion of discovery and on the parties' cross-motions for summary judgment).

In support of its motion, defendant produced evidence demonstrating that the subject barcode and number do not disclose any private information about the deceased debtor or his alleged debt. In response, however, plaintiff fails to present any competent evidence to raise a genuine issue of material fact as to whether the barcode and number revealed any private information that Congress intended to protect in enacting the FDCPA. Plaintiff merely concludes the Third Circuit declined to expressly adopt the "benign language exception" without addressing defendant's evidence. Given plaintiff's failure to dispute defendant's contentions, plaintiff appears to have abandoned the argument that the barcode and number contained private information the FDCPA intended to protect. By failing to introduce evidence to demonstrate that defendant's barcode and number contained some private information regarding the deceased debtor or his alleged

debt on their face or when scanned by a barcode scanner, plaintiff has failed to establish it has standing to maintain its FDCPA claim under § 1692f(8). Lujan, 505 U.S. at 561.

In sum, without any evidence to demonstrate that the subject barcode and number implicate the privacy concerns of the deceased debtor that Congress intended to protect with the FDCPA, the Court finds that plaintiff fails to show a "particularized" harm and, thus, plaintiff lacks Article III standing to maintain an action under 15 U.S.C. § 1692f(8). Stated differently, without the possibility of any private information regarding the deceased debtor or his alleged debt to Kennedy being publicly disclosed through a glassine envelope, the alleged risk of injury is entirely hypothetical and conjectural and, therefore, there is no standing to sue. See Benali v. AFNI, Inc., C.A. No. 15-3605 (BRM/DEA), 2017 WL 39558, at *7 (D.N.J. Jan. 4, 2017) (dismissing, on a motion for summary judgment, plaintiff's FDCPA claim for lack of standing based on plaintiff's testimony that he was aware the alleged debt was not his and, thus, was at no risk of paying a convenience fee in violation of the FDCPA).

Because plaintiff (or the deceased debtor) did not suffer an injury-in-fact, plaintiff lacks Article III standing and its claim under § 1692f(8) is not viable. Accordingly, defendant's motion

will be GRANTED and plaintiff's motion will be DENIED as to plaintiff's claim under 15 U.S.C. § 1692f(8).[4]

---

[4] Having found that plaintiff lacks standing to maintain its § 1692f(8) claim, the Court need not address plaintiff's argument regarding the "benign language exception." However, even without Spokeo the Court would still grant summary judgment as to the § 1692f(8) claim.

Plaintiff's reliance on Pirrone v. NCO Fin. Sys., Inc., C.A. No. 15-4000, 2015 WL 7766393 (E.D. Pa. Nov. 30, 2015), is misplaced because it was decided on defendant's motion for judgment on the pleadings. There, the amended complaint alleged the QR code at issue revealed the account number of the alleged debt when scanned and, thus, the court found that the amended complaint set forth sufficient facts to state a claim for relief that is facially plausible. Id. at *1 n.1. In the present context of summary judgment, plaintiff failed to present any affirmative evidence to dispute defendant's evidence that the barcode and number did not reveal any private information about the deceased debtor or his alleged debt.

Plaintiff's reliance on Park v. ARS Nat'l Servs., Inc., C.A. No. 15-2867 (SDW/SCM), 2015 WL 6579686 (D.N.J. Oct. 30, 2015), is also misplaced because the decision was also made in the context of defendant's motion for judgment on the pleadings. The Honorable Susan D. Wigenton, U.S.D.J., followed the Third Circuit's analysis of § 1692f(8) and held that the plaintiff's amended complaint stated sufficient facts—that the barcode allegedly revealed the plaintiff's account number with the debt collector—to survive the motion. In particular, the court found that because the barcode containing account information cannot be considered benign and implicates the "core concern animating the FDCPA—invasion of privacy," it need not decide whether a "benign language exception" exists. Id. (quoting Douglass, 765 F.3d at 303). Therefore, plaintiff's reliance on Pirrone and Park is inapposite.

Further, plaintiff attempts to distinguish Anenkova v. Van Ru Credit Corp., 201 F. Supp. 3d 631 (E.D. Pa. 2016), appeal dismissed, (3d Cir. Jan. 30, 2017). In Anenkova, the court granted the defendant's motion for summary judgment after recognizing that the barcode at issue did not contain any information regarding the debtor or the alleged debt. Id. at 638-39. Plaintiff argues the case is distinguishable because it involved only a barcode and not a number and barcode that exists here. Plaintiff further speculates the district court's decision is likely to be overturned on appeal. Pl.'s Br. at 7. However, plaintiff fails to recognize the opinion

## D.   15 U.S.C. § 1692g(a) – Notice Statements

The Court finds there is a genuine issue of material fact regarding whether defendant's initial letter to plaintiff included the requisite statements, precluding summary judgment on plaintiff's claims under 15 U.S.C. §§ 1692g(a)(3)-(5).[5]

Defendant argues summary judgment should be granted in its favor because the October 6, 2015 letter was not its initial communication with plaintiff in its attempt to collect the debt

---

decided defendant's summary judgment motion and the movant set forth evidence that the barcode did not contain or resemble the debtors' account number when scanned. Anenkova, 201 F. Supp. 3d at 633. Stated differently, the court held that the barcode or the information revealed when scanned "served a legitimate purpose and did not implicate the FDCPA's purpose to prohibit abusive debt collection practices and to protect the debtor's privacy." Id. at 639.

Here, the Court finds there is no fact question that the barcode and number on plaintiff's envelope do not implicate any information that runs counter to the "core concern animating the FDCPA—invasion of privacy." Accordingly, the barcode and number are benign. This is so because the number and barcode served a legitimate purpose of tracking the letter by RevSpring. The Court is required to "construe statutes sensibly and avoid constructions which yield absurd or unjust result." Dorman v. Computer Credit, Inc., 154 F. Supp. 3d 126, 130 (D.N.J. 2015), appeal dismissed, (3d Cir. Mar. 21, 2016) (quoting United States v. Fontaine, 697 F.3d 221, 227 (3d Cir. 2012)). Plaintiff may not merely rest upon the allegations of its complaint, but it must present affirmative evidence that the barcode and number at issue revealed private information regarding the deceased debtor or his alleged debt that Congress intended to protect with the FDCPA. Anderson, 477 U.S. at 256-57; Fed. R. Civ. P. 56(c)(1)(A). Plaintiff failed to do this.

[5] In contrast to the Court's discussion of plaintiff's constitutional standing to sue under 15 U.S.C. § 1692f(8), there are fact questions as to whether plaintiff has standing to assert claims under §§ 1692g(a)(3)-(5).

and, thus, the requisite statements pursuant to §§ 1692g(a)(3)-(5) were not required in the October 6 letter. The subsections require debt collectors to include a statement in their initial communication with the debtor that the debtor may dispute the validity of a debt, request verification of the debt, and request the name and address of the original creditor. 15 U.S.C. §§ 1692g(a)(3)-(5). Defendant contends the requisite statements were included in the February 21, 2014 letter mailed to "Mr. Caruso." In particular, defendant argues "the only way that the October 6, 2015 letter seeking a status [of the account] makes any sense" is that a prior letter had been sent. Def.'s Br. at 19-20. In support, defendant submitted its internal records that purport to reveal defendant received the decedent's account from Kennedy and a validation letter was placed on file to be mailed to "Mr. Caruso" on February 21, 2014. Defendant's internal records further reveal it received a confirmation from RevSpring on February 25, 2014 that the February 21 letter was mailed to "Mr. Caruso" and the letter was not returned as undeliverable. Id. at 20-21; see also Declaration of Sue Hanzel ("Hanzel Decl.") ¶¶ 23-24 [Doc. No. 19-2]. Defendant also submitted a form validation letter with the requisite statements it uses as a template for initial communications with debtors. Def.'s Br. at 20; see also Def.'s Ex. B [Doc. No. 19-2]. Defendant, however, cannot produce a copy of the actual letter mailed to "Mr. Caruso" on February 21, 2014

because it allegedly no longer exists. Defendant explains that RevSpring's policy is to retain letters sent to debtors for one (1) year and, thus, RevSpring only retained the February 21, 2014 letter until on or about February 21, 2015, approximately nine (9) months prior to plaintiff commencing this action. Def.'s Br. at 20; see also Hanzel Decl. ¶¶ 15-26. Based on the February 21, 2014 letter, defendant also argues plaintiff's claims under §§ 1692g(a)(3)-(5) are barred by the one-year statute of limitations for FDCPA claims. Def.'s Br. at 23-24.

Plaintiff argues it never received the February 21, 2014 letter and that the October 6, 2015 letter to plaintiff's counsel was the initial communication received from defendant. Plaintiff questions the veracity of defendant's representation that a validation letter with the requisite statements was mailed to plaintiff or its counsel. Pl.'s Br. at 8. In support, plaintiff submitted a Declaration executed by its counsel, certifying that the October 6, 2015 letter was the first communication counsel received from defendant. Declaration of Thomas P. Kelly III, Esq. ("Kelly Decl.") ¶ 5 [Doc. No. 20-3].

The Court finds a fact dispute exists that precludes summary judgment for either party. Defendant cannot produce a copy of the February 21, 2014 letter mailed to "Mr. Caruso." It is not even entirely clear from the record whether defendant mailed the letter to the deceased debtor, William Caruso (the Executor of the Estate)

or plaintiff's counsel. Defendant simply states it mailed the February 2014 letter to "Mr. Caruso." Defendant relies on its internal records which indicate a letter was sent on February 21, 2014, and a form letter showing what the letter would have stated, i.e., the requisite statements pursuant to §§ 1692g(a)(3)-(5). The Court finds this evidence falls short of establishing that the February 21, 2014 letter was, in fact, mailed to the right party.[6] See Turner v. Prof'l Recovery Servs., Inc., 956 F. Supp. 2d 573, 577 (D.N.J. 2013) (denying the defendant's motion for summary judgment due to "quintessential fact question that must be resolved by a jury" based on the defendant's internal records that show it never called the plaintiff after 9:00 p.m. in an attempt to collect debt in violation of 15 U.S.C. § 1692c(a)(1) and the plaintiff's affidavit stating she received phone calls after 9:00 p.m.); see also Jarzyna v. Home Props., L.P., 114 F. Supp. 3d 243, 256-60 (E.D. Pa. 2015), on reconsideration in part, C.A. No. 10-4191, 2015 WL 12834385 (E.D. Pa. Aug. 13, 2015), and recon. den., 185 F. Supp. 3d 612 (E.D. Pa. 2016) (denying cross-motions for summary judgment because even assuming that the initial letter contained the required disclosures, it remains a question of fact as to whether the letter was ever sent or received); Lee v. Credit Mgmt.,

---

[6] 15 U.S.C. § 1692c(a)(2) prohibits debt collectors from communicating with the debtor if the debt collector knows the debtor is represented by an attorney. To be sure, the Court is not deciding there was a violation of § 1692c(a)(2).

LP, 846 F. Supp. 2d 716, 726 (S.D. Tex. 2012) (denying cross-motions for summary judgment because without the actual letter sent to the debtor, material fact issues exist as to whether the statutory notice was included in the letter despite the defendant's evidence that relied on internal records/logs indicating that the initial letter should have been sent, along with a form letter showing what the letter would have stated). Accordingly, the parties' cross-motions for summary judgment will be DENIED as to plaintiff's claims under §§ 1692g(a)(3)-(5).[7]

**E.    N.J.S.A. 45:18-1 – Bond Requirement under State Law**

Plaintiff alleges that defendant's failure to post the requisite bond pursuant to N.J.S.A. 45:18-1 violates the FDCPA. Compl. ¶ 24. Defendant seeks summary judgment on plaintiff's claim for failure to post bond under state law because plaintiff lacks standing and the issue is moot. Def.'s Br. at 25. The Court agrees with defendant on the standing issue.

---

[7] The Court need not discuss defendant's statute of limitations argument in detail. Plaintiff's FDCPA claims arise from the October 6, 2015 letter. The complaint was filed on November 6, 2015, well within the one-year statute of limitations for claims under the FDCPA. 15 U.S.C. § 1692k(d). Defendant argues since the initial letter was mailed on February 21, 2014, the statute of limitations for plaintiff's claims expired on or about February 21, 2015. There is a fact dispute as to whether the February 21, 2014 letter was mailed and, if it was, to whom. Accordingly, defendant's summary judgment motion directed to the statute of limitations is denied.

The Courts agree with defendant that plaintiff lacks standing to bring a FDCPA claim for failure to post the requisite bond under state law. The state bonding statute provides:

> No person shall conduct a collection agency . . . in this state, or engage therein in the business of collecting or receiving payment for others of any account, bill or other indebtedness, or engage therein in the business of soliciting the right to collect or receive payment for another of any account, bill or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill or other indebtedness, unless such person, or the person for whom he may be acting as agent has on file with the secretary of state sufficient bond as hereinafter specified.

N.J.S.A. 45:18-1.

In opposing defendant's motion,[8] plaintiff merely argues that defendant fails to cite to "any authority other than the law itself." Pl.'s Opp'n at 10. The Court rejects plaintiff's argument. The penalty for failure to post bond under the chapter (N.J.S.A. 45:18) is provided as a "fine of not more than five hundred dollars or to imprisonment for not more than three months, or both." N.J.S.A. 45:18-5. This evidences there is no private cause of action for defendant's failure to post the requisite bond with the New Jersey Secretary of State. See Skinner v. Asset Acceptance, LLC, 876 F. Supp. 2d 473, 479 (D.N.J. 2012) ("Though defendant's

---

[8] In support of its motion for summary judgment, plaintiff did not discuss its FDCPA claim for defendant's alleged violation of the bonding requirement under N.J.S.A. 45:18-1. See generally Pl.'s Br. [Doc. No. 20-1].

attempt to collect a debt in New Jersey without filing the required bond may have been contrary to New Jersey law, defendant's challenged conduct must also stand as a violation of the FDCPA in order for plaintiff to maintain her claim. The state law violation itself is not a per se violation of the FDCPA.") (citing <u>LeBlanc v. Unifund CCR Partners</u>, 601 F.3d 1185, 1192 (11th Cir. 2010); <u>Wade v. Regional Credit Ass'n</u>, 87 F.3d 1098, 1100 (9th Cir. 1996)). Accordingly, defendant's motion will be GRANTED as to plaintiff's FDCPA claim for defendant's violation of N.J.S.A. 45:18-1.

**CONCLUSION**

In conclusion, plaintiff fails to demonstrate there are fact questions that need to be resolved as to its claim under 15 U.S.C. § 1692f(8). Neither the barcode or number implicate privacy concerns regarding the deceased debtor or his alleged debt to confer constitutional standing to plaintiff to bring suit under § 1692f(8). As to plaintiff's claims under 15 U.S.C. §§ 1692g(a)(3)-(5), the Court finds there exists a fact question as to whether the February 21, 2014 letter was mailed to the right party, if mailed at all. With regard to plaintiff's claim under N.J.S.A. 45:18-1, it fails because plaintiff lacks standing. Accordingly, defendant's motion will be GRANTED and plaintiff's motion will be DENIED as to plaintiff's claim under 15 U.S.C. § 1692f(8). The cross-motions as to plaintiff's 15 U.S.C. §§ 1692g(a)(3)-(5) claims will be DENIED. As to plaintiff's claim for a violation of

N.J.S.A. 45:18-1, defendant's motion will be GRANTED. An appropriate Order will be separately entered.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: June 22, 2017